**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CRISTINA ROSS<br>Plaintiff, | : | |
| v. | : | Civ. No. 3:09CV01966 (PCD) |
| NEW CANAAN ENVIRONMENTAL COMMISSION,<br>Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Cristina Ross brings this complaint against Defendant New Canaan Environmental Commission, alleging violations of her equal protection and due process rights under the Fourteenth Amendment, as enforced through 42 U.S.C. §§ 1983, 1988. Defendant moves pursuant to FED R. CIV. P. 12(b)(6) to dismiss all counts of the complaint [Doc. No. 10]. For the reasons stated herein, this motion is **granted.**

## I. BACKGROUND

The following facts are recited according to the complaint. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Plaintiff Cristina Ross is an adult female resident of the State of Connecticut. (Compl. ¶ 3.) She is the owner of 2.2 acres of real property located at 523 Oenoke Road, in the Town of New Canaan, Connecticut. (Id.) Defendant New Canaan Environmental Commission ("NCEC") is the Town of New Canaan agency that receives, processes, and acts upon applications for permits to conduct regulated activities in inland wetlands and watercourses or in adjacent regulated areas. (Id. ¶ 4.) NCEC acts pursuant to Sections 22a-36 through 22a-45 of the Connecticut General Statutes, as well as the Inland Wetlands and Watercourses

Regulations of the town of New Canaan. (Id.)

Plaintiff's property at 523 Oenoke Road is divided in two by a strip of wetlands; the western portion contains an architecturally significant house known as the Alice Ball House, the eastern portion is undeveloped and the wetlands must be crossed to access it from the public road. (Compl. ¶¶ 7, 13-14.) On October 12, 2005, Plaintiff filed an application with Defendant, requesting a license to conduct several regulated activities on the wetlands and associated areas of her property. (Id. ¶ 8.) Defendant then conducted a public hearing on Plaintiff's application, held on several dates from December 19, 2005 through March 13, 2006. (Id. ¶¶ 9-11.) During these hearings, Plaintiff proposed to construct a house on the eastern portion of the property, build a driveway across the wetlands, install a swimming pool, and convert the Alice Ball House into a pool house. (Id. ¶ 16.) Plaintiff presented five different plans with varying degrees of impact on the wetlands. (Id.) One plan among the five was modified to include suggestions from Defendant and the public. This proposal ("Alternative 2B") was the final plan submitted by Plaintiff. (Id. ¶ 17.) Alternative 2B incorporated several measures intended to reduce both the danger of flooding and the adverse impact on the wetlands. (Id. ¶¶ 17, 20.) Plaintiff's experts testified that these measures would be adequate to control flooding during a significant rainstorm and to offset the impact of the construction on the wetlands. (Id. ¶¶ 18-20.)

After concluding the hearings, Defendant deliberated and voted to deny Plaintiff's application, on the grounds that: "(1) [f]illing of the wetlands is greater than it needs to be, resulting in an unnecessary extent of irreversible and irretrievable loss of wetlands. (2) The regulated activities...outside of the wetlands are greater than they need to be, resulting in unnecessary adverse impact to the wetlands. (3) There are feasible and prudent alternatives...that

would cause less or no environmental impact to the wetlands." (Compl. ¶¶ 12, 22.)

Plaintiff asserts that the denial of her application was "outrageously arbitrary and shocking to the conscience" and alleges that Defendant deprived her of substantive due process in violation of the Due Process clause of the Fourteenth Amendment. (Compl. ¶¶ 23, 30.) Plaintiff further argues that her application was treated differently than any application by a male applicant, because it was subjected to greater scrutiny and rejected on"spurious and frivolous grounds." (Id. ¶¶ 24-25.) Plaintiff further alleges the treatment of her application amounted to a denial of the equal protection of the law, based on her sex, in violation of the Equal Protection clause of the Fourteenth Amendment. (Id. ¶ 29.)

Plaintiff appealed the denial to the Superior Court of Connecticut, and thereafter appealed the Superior Court's judgment to the Connecticut Appellate Court. (Id. ¶ 26.) Before the Connecticut Appellate Court could rule on Plaintiff's appeal, Defendant reversed itself and granted the License to Conduct a Regulated Activity for which Plaintiff had applied. (Id. ¶ 27.) Plaintiff did not allege the aforementioned constitutional violations in the Superior Court proceeding. Plaintiff asserts that she suffered both financial and psychological damages as a proximate result of Defendant's initial denial of the license: specifically, legal fees from her Connecticut state court action, losses resulting from the delay in construction, stress, anxiety, and emotional pain. (Id. ¶ 28.)

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch

Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). In ruling on a motion under FED R. CIV. P. 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under FED R. CIV. P. 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949.

For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Bell Atlantic, 550 U.S. at 555.

## III. DISCUSSION

### A. Res Judicata in a Rule 12(b)(6) Motion

In support of the Motion to Dismiss under FED R. CIV. P. 12(b)(6), Defendant asserts that Plaintiff's claims are barred by res judicata, due to the prior judgment of the Superior Court of Connecticut on Plaintiff's administrative appeal. Plaintiff responds that res judicata is "improperly raised by a motion to dismiss anyway, [sic] since under Connecticut law it is an

affirmative defense" and therefore "may not be raised by a motion to dismiss but only by a special defense followed by a motion for summary judgment." (Pl.'s Opp. to Mot. Dismiss at 17.) Defendant argues, based on Erie R. Co. v. Tompkins, 304 U.S. 64, (1938), that "[i]t is well established that federal rules govern procedural matters." (Def.'s Reply to Opp. to Mot. Dismiss at 8.) Defendant is correct that the Erie doctrine does not affect federal procedural rules governing practice and pleading. Hanna v. Plumer, 380 U.S. 460, 472-73 (1965). The rules dictating when a defendant may field an affirmative defense are unarguably procedural. Therefore, the Federal Rules of Civil Procedure control.

As defined by FED R. CIV. P. 8(c), res judicata is an affirmative defense. "An affirmative defense may be raised in a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Res judicata is no exception to this rule: "Generally, res judicata is an affirmative defense to be pleaded in the defendant's answer. . . . However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." Day v. Moscow, 955 F. 2d 807, 811 (2d Cir. 1992) (internal citations omitted). The Complaint asserts that Plaintiff had a prior proceeding in the Superior Court of Connecticut. Therefore, Defendant correctly raised the affirmative defense of res judicata in this motion.

**B. Res Judicata Bars Plaintiff's Claim**

The Federal Full Faith and Credit Statute mandates that "[w]hen an Article III court is presented with controversies that have previously been resolved by state-court judgments, it is required by federal statute to accord such judgments 'the same full faith and credit . . . as they

have by law or usage in the courts of such state . . . from which they are taken." Town of Deerfield, N.Y. v. F.C.C., 992 F.2d 420, 428 (2d Cir. 1993) (quoting 28 U.S.C. § 1738). According full faith and credit to a state court's judgment entails applying that state's doctrines of collateral estoppel and res judicata. An Article III court must give a state court judgment "the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Therefore, this court must determine the preclusive effect of the Superior Court's judgment under Connecticut's claim preclusion doctrine.

Under Connecticut law, a final judgment on the merits has preclusive effect as to all subsequent claims that either were litigated or could have been litigated in the proceedings leading up to that judgment. When:

> "an existing final judgment [is] rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, [it] is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction . . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made."

Powell v. Infinity Ins. Co., 922 A.2d 1073, 1078 (Conn. 2007) (quoting Wade's Dairy Inc. v. Fairfield, 436 A.2d 24, 26-27 (Conn. 1980)). See also Massey v. Town of Branford, 988 A.2d 370, 378-379 (Conn. App. 2010); Tuccio Custom Homes, Inc. v. Lamonica, 975 A.2d 1280, 1281-82 (Conn. App. 2009). Plaintiff's proceeding before the Superior Court resulted in a final judgment rendered on the merits, and neither party suggests fraud or collusion. The parties in that proceeding were identical to the parties here. The only remaining issues, therefore, are whether the claims brought in this proceeding are sufficiently related to those litigated before the

Superior Court and whether the Superior Court was jurisdictionally competent.

It is well established that under Connecticut law res judicata bars not only those claims actually asserted in a prior proceeding, but also "subsequent relitigation of any claims relating to the same cause of action . . . *which might have been made*" in that proceeding. Isaac v. Truck Service, Inc., 752 A.2d 509, 512 (Conn. 2000) (quoting Orselet v. DeMatteo, 539 A.2d 95, 97 (Conn. 1988)) (emphasis added). See also Tuccio Custom Homes, Inc., 975 A.2d 1280 at 1282; Massey, 988 A.2d at 379. Connecticut has adopted a transactional test as a guide to determining whether a claim not litigated in the prior proceeding will be barred by res judicata. Under that test, res judicata operates to extinguish "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Massey, 988 A.2d at 381 (quoting Powell, 922 A.2d at 1080) (internal quotation marks omitted). "What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id.

It is abundantly clear that Plaintiff's asserted claims are part of a common transaction with the claims she asserted before the Superior Court. The administrative appeal and the current suit both concern the NCEC's denial of her application to conduct restricted activity on a wetland. The actions of the NCEC at issue in the two cases are identical, and therefore as closely related as possible in time, space, origin, and motivation. The claims litigated before the Superior Court and those in this complaint would form a convenient trial unit, and their treatment

as a unit would conform to the parties' expectations. Plaintiff's current claim and her prior claims in the Superior Court are therefore sufficiently transactionally related to be subject to res judicata under Connecticut law.

Plaintiff asserts, however, that "[r]es judicata obviously cannot bar the plaintiff's equal protection claim, since no such claim could have been raised in her administrative appeal." (Pl.'s Opp. to Mot. Dismiss at 16.) She further argues that "[i]t does not bar her substantive due process claim either, because . . . a different legal standard applies and in fact the plaintiff was required to exhaust precisely those administrative appeal remedies before being permitted to file the present suit." (Id. at 16-17.) Plaintiff does not elaborate on either of these assertions, nor does she cite any authority in case law or statute. However, the court will still address whether the Superior Court was competent to hear the constitutional claims Plaintiff now brings.

In Connecticut, where the plaintiff did not have an "adequate opportunity" to litigate the matter in the prior proceeding because the prior court lacked jurisdiction, claim preclusion will not apply. Conn. Nat'l Bank v. Rytman, 694 A.2d 1246, 1256-57 (Conn. 1997) ("If however, the court in the first action *would clearly not have had jurisdiction* to entertain the omitted theory or ground (or, having jurisdiction, *would clearly have declined to exercise it as a matter of discretion*),[1] then a second action in a competent court presenting the omitted theory or ground should not be precluded") (emphasis in original). See generally Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 382 (1985); Restatement 2d of Judgments, § 26.

It is pellucidly clear, however, that under Connecticut law the Superior Court would have

[1] Plaintiff makes no showing or argument that the Superior Court would have exercised its discretion not to hear her constitutional claims. Therefore, the court need not address this prong of the Rytman test.

had jurisdiction to hear Plaintiff's constitutional claims. Plaintiff's suit before the Superior Court was an administrative appeal, defined as any appeal "taken pursuant to statute from decisions . . . of commissions or agencies . . . of any political subdivision of the state, includ[ing] specifically appeals taken pursuant to . . . other enabling legislation." Conn. Practice Book § 14-5. It is unclear why Plaintiff believes that her constitutional claims could not have been raised during the Superior Court proceedings, as an administrative appeal is considered an ordinary civil action in almost all respects. Conn. Practice Book § 14-6. Furthermore, none of the respects in which administrative appeals differ from other civil actions are applicable to Plaintiff's claim. Administrative appeals from decisions of a wetlands commission to the Superior Court are governed by Connecticut General Statutes Section 22a-43, and can be exercised "only in the manner prescribed by statute." Munhall v. Inland Wetlands Comm'n, 602 A.2d 566, 568 (Conn. 1992). Such appeals are subject to special procedural rules, which restrict only procedures not at issue in this case, such as the attempted withdrawal or settlement of appeals and further review of the Superior Court's decision by the Appellate Court. CONN. GEN. STAT. § 22a-43, subsection (d). See also Conn. Practice Book § 14-7A. No part of Section 22a-43 denies reviewing courts subject matter jurisdiction over constitutional claims. Administrative appeals are considered civil actions and procedural restrictions thereon are to be "liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice . . . ." CONN. GEN. STAT. § 8-8, subsection (p).

Furthermore, the plaintiff in a 1992 case was able to bring constitutional claims before the Superior Court in an administrative appeal from the decision of a municipal wetlands board, alleging that "by imposing three of the eleven conditions . . . of the Commission's approval of

the plaintiff's permit application, the Commission acted illegally . . . and in violation of the Plaintiff's statutory and constitutional rights." Tire Pond Salvage, Inc. v. Inland/Wetlands Comm'n, 1992 Conn. Super. LEXIS 1157 (Conn. Super. Ct. May 1, 1992) (internal quotation marks omitted). Therefore, the Superior Court clearly has jurisdiction to hear constitutional claims in a wetlands administrative appeal.

Plaintiff also asserts that she could not have brought her due process claim before the Superior Court because she was required to exhaust all "administrative appeal remedies" before filing the present suit. (Pl.'s Opp. to Mot. Dismiss at 16-17.) However, Plaintiff gives no evidence that she did not exhaust her administrative remedies. Furthermore, administrative appeals from decisions of a municipal wetlands agency empowered by the Inland Wetlands and Watercourses Act are not subject to the exhaustion requirement set forth in Section 4-183, as they are governed by Section 22a-43. See Klug v. Inland Wetlands Comm'n of Torrington, 563 A.2d 755, 756 (Conn. App. 1989). While the governing section of the General Statutes, Section 22a-43, did at one time incorporate the provisions of Section 4-183, it was amended in 2002 to exclude any mention of Section 4-183. 2002 Ct. ALS 132, 66 (2002). As currently written, Section 22a-43 contains no independent exhaustion requirement parallel to that in Section 4-183, and, in any case, Plaintiff has offered no evidence that such a requirement would have prevented her from bringing her claims in Superior Court. Therefore, Plaintiff's argument that her constitutional claims could not have been brought in her administrative appeal fails.

It is clear that Plaintiff could have brought her constitutional claims in her administrative appeal, which resulted in a final judgment on the merits. She now seeks to relitigate those claims against the same party in federal court. Applying the preclusive effect given to the prior

proceeding under Connecticut law, Plaintiff's claims are now barred by res judicata. Therefore, this court need reach no other issue in order to resolve the case before it.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 10] is **granted.** The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, this __8th__ day of June, 2010.

/s/
Peter C. Dorsey
U.S. District Judge